UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
MAXINE BARNES,                        )

                                )     **COMPLAINT**

            Plaintiff,      )

                                )     **JURY TRIAL DEMANDED**

  -against-              )

                                )
THE CITY OF NEW YORK; POLICE OFFICER  )
FRANK BULZONI, Shield No. 2681; POLICE  )
SERGEANT ALFRED KELLEY, Shield No. 1974; )
POLICE DETECTIVE SPECIALIST VINCENT  )
MARTINOS, Shield No. 07284; POLICE  )
SERGEANT SPECIALIST WAYNE LOCK,  )
Shield No. 05434; POLICE SERGEANT "FNU"  )
[First Name Unknown] FITZPATRICK; POLICE  )
OFFICER "FNU" [First Name Unknown]  )
TAYLOR; JOHN DOE # 1; JOHN DOE # 2;  )
JOHN DOE # 3; JOHN DOE # 4; NEW YORK  )
CITY COMMUNITY BOARD 9 MEMBER  )
EVE-LYN WILLIAMS; JOHN DOES; RICHARD  )
ROES,                            )

                                )
            Defendants.     )
------------------------------------------------------------X

**<u>PRELIMINARY STATEMENT</u>**

     1.   This is a civil action in which the plaintiff, MAXINE

BARNES, seeks relief for the defendants' violation of her rights

secured by the Civil Rights Act of 1871, 42 U.S.C. § 1983, by the

United States Constitution, including its First, Fourth and

Fourteenth Amendments, and by the laws and Constitution of the

State and City of New York.  The plaintiff seeks damages, both

compensatory and punitive, affirmative and equitable relief, an

award of costs and attorneys' fees, and such other and further

1

relief as this court deems equitable and just.

## JURISDICTION

2.    This action is brought pursuant to the Constitution of the United States, including its First, Fourth and Fourteenth Amendments, and pursuant to 42 U.S.C. § 1983.  Jurisdiction is conferred upon this court by 42 U.S.C. § 1983 and 28 U.S.C. §§1331 and 1343(a)(3) and (4), this being an action seeking redress for the violation of the plaintiff's constitutional and civil rights.

3.    The plaintiff further invokes this court's supplemental jurisdiction, pursuant to 28 U.S.C. §1367, over any and all state law claims and as against all parties that are so related to claims in this action within the original jurisdiction of this court that they form part of the same case or controversy.

## JURY TRIAL DEMANDED

4.    Plaintiff demands a trial by jury on each and every one of his claims as pleaded herein.

## VENUE

5.    Venue is proper for the United States District Court for the Southern District of New York pursuant to 28 U.S.C. §1391 (a), (b) and (c).

## PARTIES

6.    Plaintiff was at all times relevant herein a resident

of the State of New York, County of Kings.

7.    Defendant THE CITY OF NEW YORK is and was at all times relevant herein a municipal entity created and authorized under the laws of the State of New York.  It is authorized by law to maintain a police department, which acts as its agent in the area of law enforcement and for which it is ultimately responsible. Defendant THE CITY OF NEW YORK assumes the risks incidental to the maintenance of a police force and the employment of police officers as said risk attaches to the public consumers of the services provided by the New York City Police Department.

8.    Defendants POLICE OFFICER FRANK BULZONI, POLICE SERGEANT ALFRED KELLEY, POLICE DETECTIVE SPECIALIST VINCENT MARTINOS, POLICE SERGEANT SPECIALIST WAYNE LOCK, POLICE SERGEANT "FNU" [First Name Unknown] FITZPATRICK, POLICE OFFICER "FNU" [First Name Unknown] TAYLOR, JOHN DOE # 1, JOHN DOE # 2, JOHN DOE # 3, JOHN DOE # 4, and JOHN DOES are and were at all times relevant herein duly appointed and acting officers, servants, employees and agents of THE CITY OF NEW YORK and/or the New York City Police Department (NYPD), a municipal agency of defendant THE CITY OF NEW YORK.  Defendants POLICE OFFICER FRANK BULZONI, POLICE SERGEANT ALFRED KELLEY, POLICE DETECTIVE SPECIALIST VINCENT MARTINOS, POLICE SERGEANT SPECIALIST WAYNE LOCK, POLICE SERGEANT "FNU" [First Name Unknown] FITZPATRICK, POLICE OFFICER "FNU" [First Name Unknown] TAYLOR, JOHN DOE # 1, JOHN DOE # 2, JOHN

3

DOE # 3, JOHN DOE # 4, and JOHN DOES are and were at all times relevant herein acting under color of state law in the course and scope of their duties and functions as officers, agents, servants, and employees of defendant THE CITY OF NEW YORK, were acting for, and on behalf of, and with the power and authority vested in them by THE CITY OF NEW YORK and the New York City Police Department, and were otherwise performing and engaging in conduct incidental to the performance of their lawful functions in the course of their duties.  Defendants POLICE OFFICER FRANK BULZONI, POLICE SERGEANT ALFRED KELLEY, POLICE DETECTIVE SPECIALIST VINCENT MARTINOS, POLICE SERGEANT SPECIALIST WAYNE LOCK, POLICE SERGEANT "FNU" [First Name Unknown] FITZPATRICK, POLICE OFFICER "FNU" [First Name Unknown] TAYLOR, JOHN DOE # 1, JOHN DOE # 2, JOHN DOE # 3, JOHN DOE # 4, and JOHN DOES are sued individually.

9.    Defendants POLICE SERGEANT ALFRED KELLEY, POLICE
DETECTIVE SPECIALIST VINCENT MARTINOS, POLICE SERGEANT SPECIALIST
WAYNE LOCK, POLICE SERGEANT "FNU" [First Name Unknown]
FITZPATRICK, POLICE OFFICER "FNU" [First Name Unknown] TAYLOR,
JOHN DOE # 1, JOHN DOE # 2, JOHN DOE # 3, JOHN DOE # 4[1], and
RICHARD ROES are and were at all times relevant herein duly
appointed and acting supervisory officers, servants, employees
and agents of THE CITY OF NEW YORK and/or the New York City
Police Department, responsible for the training, retention,
supervision, discipline and control of subordinate members of the
police department under their command.  Defendants POLICE
SERGEANT ALFRED KELLEY, POLICE DETECTIVE SPECIALIST VINCENT
MARTINOS, POLICE SERGEANT SPECIALIST WAYNE LOCK, POLICE SERGEANT
"FNU" [First Name Unknown] FITZPATRICK, POLICE OFFICER "FNU"
[First Name Unknown] TAYLOR, JOHN DOE # 1, JOHN DOE # 2, JOHN DOE
# 3, JOHN DOE # 4, and RICHARD ROES are and were at all times
relevant herein acting under color of state law in the course and
scope of their duties and functions as supervisory officers,
agents, servants, and employees of defendant THE CITY OF NEW
YORK, were acting for, and on behalf of, and with the power and
authority vested in them by THE CITY OF NEW YORK and the New York
City Police Department, and were otherwise performing and

---

1 The precise ranks of Defendants TAYLOR, JOHN DOE # 1, JOHN DOE
# 2, JOHN DOE # 3, and JOHN DOE # 4, is presently unknown.

engaging in conduct incidental to the performance of their lawful functions in the course of their duties.  Defendants POLICE SERGEANT ALFRED KELLEY, POLICE DETECTIVE SPECIALIST VINCENT MARTINOS, POLICE SERGEANT SPECIALIST WAYNE LOCK, POLICE SERGEANT "FNU" [First Name Unknown] FITZPATRICK, POLICE OFFICER "FNU" [First Name Unknown] TAYLOR, JOHN DOE # 1, JOHN DOE # 2, JOHN DOE # 3, JOHN DOE # 4, and RICHARD ROES are sued individually.

10.  Defendant EVE-LYN WILLIAMS is a Member at Large on New York City Community Board 9.  In addition to being a Board Member, she is listed as one of the "Members of the Executive" of Community Board 9, along with the Chairperson, the 1st and 2nd Vice Chairpersons, the Executive Secretary, the Treasurer, and another Member at Large.  *See*, http://www.communitybrd9bklyn.org/about/ .

11.  The Community Board 9 website, viewable at http://www.communitybrd9bklyn.org/about/community-boards/ , describes their function as follows:

**WHAT WE DO**

1.      Community Boards afford the citizenry the opportunity to have their voices heard. This input is helpful in making decisions about how best to use city resources, including land and tax dollars.

2.      Over the years, modifications to the City Charter have given Community Boards a formal role in decisions on land use, preparation of capital and expense budgets, and monitoring service delivery.

3.      Community Boards hold meetings every month that are open to the public. Boards also hold public hearings so that citizens can voice their opinions and concerns about issues related to their district. Matters are voted on by the Board, and recommendations are forwarded to the relevant agencies and/or elected officials.

6

12.   According to the Mayor's Community Affairs Unit, viewable at http://www.nyc.gov/html/cau/html/cb/about.shtml#board , Community Boards serve the following functions within the City government:

**Board Composition & Membership**

Community boards are local representative bodies. There are 59 community boards throughout the City, and each one consists of up to 50 unsalaried members, half of whom are nominated by their district's City Council members. Board members are selected and appointed by the Borough Presidents from among active, involved people of each community and must reside, work, or have some other significant interest in the community.

Each community board is led by a District Manager who establishes an office, hires staff, and implements procedures to improve the delivery of City services to the district. While the main responsibility of the board office is to receive complaints from community residents, they also maintain other duties, such as processing permits for block parties and street fairs. Many boards choose to provide additional services and manage special projects that cater to specific community needs, including organizing tenants associations, coordinating neighborhood cleanup programs, and more.

**Responsibilities**

Community boards have a variety of responsibilities, including but not limited to:

- *Dealing with land use and zoning issues.* CBs [community boards] have an important advisory role and must be consulted on the placement of most municipal facilities in the community. Applications for a change in or variance from the zoning resolution must come before the board for review, and the board's position is considered in the final determination.

- *Assessing the needs of their own neighborhoods.* CBs assess the needs of their community members and meet with City agencies to make recommendations in the City's budget process.

- *Addressing other community concerns.* Any issue that affects part or all of a community, from a traffic problem to deteriorating housing, is a proper concern of community boards.

7

It is important to note that while community boards serve as advocates for their neighborhood, they do not have the ability to order any City agency or official to perform any task. Despite this limitation, boards are usually successful in resolving the problems they address

## Meetings

Anyone can attend a community board meeting! Board meetings occur once a month and are open to the public. At these meetings, members address items of concern to the community and hear from attendees. Boards regularly conduct additional public hearings - on the City's budget, land use matters, etc. - to give community members the opportunity to express their opinions and concerns.

## Committees

Board committees do most of the planning and work on the issues that are brought to action at community board meetings. Each community board establishes the committee structure and procedures it feels will best meet the needs of its district. Committees may be *functional committees* that deal with specific Charter mandates (e.g. "Land Use Review" and "Budget" committees) or *agency committees* that relate to a particular agency (e.g. "Police" and "Sanitation" committees), among other structures. Non-board members may apply to join or work on board committees, which helps provide additional expertise and manpower.

## STATEMENT OF FACTS

13.    Plaintiff MAXINE BARNES is a vocal community activist, and often advocates against gentrification that is destructive to her community, which is located within the geographic area covered by New York City Community Board 9 (which covers the Brooklyn neighborhoods of South Crown Heights, Prospect Lefferts Gardens, Wingate and portions of North Flatbush).

14.    Plaintiff often advocates vigorously against the actions and attempted actions of Community Board 9, which body often acts, and attempts to act, in ways that promote gentrification and that

8

are destructive to the community.

15.   Plaintiff, through her activism, is a thorn in the side of Community Board 9 and its members, including Defendant EVE-LYN WILLIAMS.

16.   On the evening of May 19, 2015 Plaintiff and other activists and members of the public attended a meeting of Community Board 9's ULURP [Uniform Land Use Review Procedure] committee.

17.   Community Board 9's website states that "[t]he ULURP Committee deals with Land Use and Zoning (Variance) issues." *See*, http://www.communitybrd9bklyn.org/committees/ .

18.   The meeting had not yet started, and many of the members of the public in attendance in the room were vociferous in their opposition to the rezoning measures that the Board members were considering.

19.   The environment in the room was raucous, and animated.

20.   At some point Defendant EVE-LYN WILLIAMS accosted Plaintiff, and was screaming at Plaintiff in a manner that was not decipherable by Plaintiff.

21.   Plaintiff at that point assumed that Defendant EVE-LYN WILLIAMS was simply angry at Plaintiff for her advocacy, and was yelling at her out of anger.

22.   Plaintiff at that point did not yet know that Defendant EVE-LYN WILLIAMS was going to attempt to frame Plaintiff for allegedly throwing an object at her on May 19, 2015, allegedly cutting her face.

23.   Plaintiff at no point on May 19, 2015 threw an object at Defendant EVE-LYN WILLIAMS.

24.   Additionally, Defendant EVE-LYN WILLIAMS did not suffer any cut to her face caused by any object that someone else may have thrown.

25.   Defendant EVE-LYN WILLIAMS knew that Plaintiff had not thrown anything at her, and made a complaint to the police to attempt to frame Plaintiff, in order to have Plaintiff be falsely arrested and in order to maliciously prosecute Plaintiff, and in retaliation for Plaintiff's exercise of her rights under the First Amendment.

26.   The events in the meeting room on May 19, 2015 were filmed by, *inter alia*, a videographer who had cameras set up on tripods.

27.   JOHN DOE members of the NYPD, possibly including some or all of POLICE OFFICER FRANK BULZONI, POLICE SERGEANT ALFRED KELLEY, POLICE DETECTIVE SPECIALIST VINCENT MARTINOS, POLICE SERGEANT SPECIALIST WAYNE LOCK, POLICE SERGEANT "FNU" [First Name Unknown] FITZPATRICK, POLICE OFFICER "FNU" [First Name Unknown] TAYLOR, JOHN DOE # 1, JOHN DOE # 2, JOHN DOE # 3, and JOHN DOE # 4, along with Defendant EVE-LYN WILLIAMS, gathered and watched video footage on May 19, 2015 within the meeting room, and spoke with each other.

28.   Video footage shows clearly that Plaintiff did not throw anything at Defendant EVE-LYN WILLIAMS.

10

29.   The video footage shows that at one point prior to the start of the meeting another individual throws a paper sign that bumps into Defendant EVE-LYN WILLIAMS' face.

30.   It is clear from the video footage that there was no cut caused to Defendant EVE-LYN WILLIAMS' face from the paper sign.

31.   On information and belief, in the time period following the meeting, Defendant EVE-LYN WILLIAMS wore a sham band-aid on her face, to pretend that she had a cut on her face stemming from May 19, 2015.   There was no cut underneath the band-aid, at least none that occurred as a result of anything having been thrown at her in the meeting room on May 19, 2015.

32.   In the days that followed May 19, 2015, on information and belief the next day (May 20, 2015), JOHN DOES members of the NYPD, possibly including some or all of POLICE OFFICER FRANK BULZONI, POLICE SERGEANT ALFRED KELLEY, POLICE DETECTIVE SPECIALIST VINCENT MARTINOS, POLICE SERGEANT SPECIALIST WAYNE LOCK, POLICE SERGEANT "FNU" [First Name Unknown] FITZPATRICK, POLICE OFFICER "FNU" [First Name Unknown] TAYLOR, JOHN DOE # 1, JOHN DOE # 2, JOHN DOE # 3, and JOHN DOE # 4 went to the videographer's home and forced him to provide them with footage from May 19, 2015.

33.   These JOHN DOES members of the NYPD, including POLICE OFFICER FRANK BULZONI, POLICE SERGEANT ALFRED KELLEY, POLICE DETECTIVE SPECIALIST VINCENT MARTINOS, POLICE SERGEANT SPECIALIST WAYNE LOCK, POLICE SERGEANT "FNU" [First Name Unknown]

11

FITZPATRICK, POLICE OFFICER "FNU" [First Name Unknown] TAYLOR, JOHN DOE # 1, JOHN DOE # 2, JOHN DOE # 3, and JOHN DOE # 4 conspired with Defendant EVE-LYN WILLIAMS to falsely arrest and maliciously prosecute Plaintiff in retaliation for the exercise of her rights under the First Amendment.

34.   Some or all of POLICE OFFICER FRANK BULZONI, POLICE SERGEANT ALFRED KELLEY, POLICE DETECTIVE SPECIALIST VINCENT MARTINOS, POLICE SERGEANT SPECIALIST WAYNE LOCK, POLICE SERGEANT "FNU" [First Name Unknown] FITZPATRICK, POLICE OFFICER "FNU" [First Name Unknown] TAYLOR, JOHN DOE # 1, JOHN DOE # 2, JOHN DOE # 3, and JOHN DOE # 4 work with the NYPD's Community Affairs Division, which works closely with Community Boards, including Community Board 9, as do the other members of the NYPD assigned to the NYPD's 71st Precinct.

35.   On prior occasions NYPD Community Affairs Officers, including Defendant BULZONI, have chastised local activists at Community Board 9 meetings, taking substantive political positions in line with those of the Board members, and contrary to the position of activists in attendance.

36.   On May 26, 2015, at approximately 6:30 p.m., Plaintiff was on her way to attend a general Community Board 9 meeting, which was being held at a different location (in the School for the Deaf on Eastern Parkway).

37.   Plaintiff, who at age 63 had never been arrested before in her life, did not even make it inside of the building.

38.   As Plaintiff walked toward the building three JOHN DOES members of the NYPD, on information and belief Defendants TAYLOR, MARTINOS, and JOHN DOE # 1, approached Plaintiff.

39.   On information and belief, Defendants TAYLOR and MARTINOS were Community Affairs police from the 71st Precinct, and JOHN DOE # 1 (a white male) was a regular police officer from the 71st Precinct.

40.   On information and belief JOHN DOE # 1 is Defendant BULZONI.

41.   Defendant MARTINOS told Plaintiff that she needs to be very careful about what she says, and told her (which was a lie) that he had a videotape showing her throwing something at a Community Board member, and that Plaintiff was under arrest.

42.   These three JOHN DOES members of the NYPD, on information and belief Defendants TAYLOR, MARTINOS, and JOHN DOE # 1, handcuffed Plaintiff with excessive and punitive tightness.

43.   These three JOHN DOES members of the NYPD, on information and belief Defendants TAYLOR, MARTINOS, and JOHN DOE # 1, then put Plaintiff inside of a police van.

44.   Plaintiff sat in the van at the location, in pain from the excessively tight handcuffs, for approximately 10 minutes.

45.   JOHN DOE # 2, an African-American female member of the NYPD, then got into the van and sat next to Plaintiff, and the van then left the location.

46.   Plaintiff complained that the handcuffs were causing

13

her pain.

47.  JOHN DOE # 2 just told Plaintiff to relax, and neither she, nor the JOHN DOE # 3 driver or JOHN DOE # 4 passenger of the van, loosened or adjusted Plaintiff's handcuffs in any way.

48.  Plaintiff also requested to be handcuffed in the front of her body, rather than rear-cuffed, because of the strain on her body from being rear-cuffed, but that request was refused by JOHN DOE # 2, and the JOHN DOE # 3 driver and the JOHN DOE # 4 passenger of the van.

49.  Plaintiff was taken to the 71st Precinct, and placed into a holding cell.

50.  While Plaintiff was in the holding cell Defendant BULZONI said to her, in sum and substance, "that's what protesting gets you."

51.  Plaintiff was held all night at the 71st Precinct, and all the next morning, and then taken to Brooklyn Central Booking at approximately 3 p.m. on May 27, 2015.

52.  Plaintiff was held for a couple of hours at Central Booking, and then arraigned and released on her own recognizance in the late afternoon or early evening.

53.  The arraignment Judge issued a Temporary Order of Protection, ordering Plaintiff to, *inter alia*, stay away from Defendant EVE-LYN WILLIAMS.

54.  Because of the Temporary Order of Protection Plaintiff was unable to attend any further Community Board 9 meetings until

14

the bogus charges that had been lodged against her were dismissed.

55.   Plaintiff was falsely charged with Assault in the Third Degree, Menacing in the Second Degree, Criminal Possession of a Weapon in the Fourth Degree, Attempted Assault in the Third Degree, Menacing in the Third Degree, and Harassment in the Second Degree.

56.   The Deponent on the Criminal Court Complaint lodged against Plaintiff, an Assistant District Attorney Leslie Englesohn, states under penalty of perjury as follows:

> Deponent is informed by Evelyn Williams that, at the above time and place [approximately 7:45 p.m. at 1185 Carroll Street in Brooklyn], the Defendant [Plaintiff MAXINE BARNES] did throw an unknown object at the informant.
>
> The Deponent is informed by the informant that the above described actions caused informant to suffer a cut to the face, to suffer substantial pain, to fear physical injury and to become alarmed and annoyed.

57.   These allegations are bald lies.

58.   Plaintiff did not throw any object at Defendant EVE-LYN WILLIAMS.

59.   Defendant EVE-LYN WILLIAMS did not suffer a cut to the face.

60.   Defendant EVE-LYN WILLIAMS did not suffer substantial pain.

61.   Defendant EVE-LYN WILLIAMS did not fear physical injury.

62.   Defendant EVE-LYN WILLIAMS did not become alarmed.

63.   Defendant EVE-LYN WILLIAMS was, however, exceedingly

15

annoyed with Plaintiff due to Plaintiff's activism, and lodged these false allegations against Plaintiff to retaliate for Plaintiff's activism.

64.    On the NYPD's Arrest Report it states in the narrative section:

> At T/P/O [time and place of occurrence] A/O [arresting officer, Defendant BULZONI] did arrest Defendant [Plaintiff MAXINE BARNES] on existing Complaint Report # 2015-071-03329.  At T/P/O C/V [complainant / victim, Defendant EVE-LYN WILLIAMS] states during a Community Board 09 meeting; Defendant did throw an unknown object at C/V causing a cut to C/V's left cheek.

65.    Defendant BULZONI also lied to ADA Englesohn, and told her that Plaintiff had stated that she may have thrown a paper at Defendant EVE-LYN WILLIAMS.

66.    Plaintiff never said that to Defendant BULZONI.

67.    Plaintiff never threw anything at Defendant EVE-LYN WILLIAMS.

68.    The "Supervisor Approving" the Arrest Report was Defendant KELLEY.

69.    The narrative section of the NYPD Complaint Report that is referenced in the NYPD Arrest Report states as follows:

> At T/P/O victim [Defendant EVE-LYN WILLIAMS] states during a CB9 [Community Board 9] meeting perp [perpetrator] did throw an unk [unknown] object at victim causing a cut above victim's lip.  Aided Card prepared.  No Argus [on information and belief a brand] cameras present.  Sgt Fitzpatrick reviewed.

70.    The "Reporting / Investigating M.O.S. [member of

16

service] for the Complaint Report was Defendant MARTINOS.

71. The "Supervisor Approving" the Complaint Report was Defendant LOCK.

72. Plaintiff had to appear in Criminal Court approximately 3 or 4 times to address these bogus charges that had been brought against her.

73. All charges against Plaintiff were dismissed in their entirety on December 18, 2015 on the motion of the District Attorney's office.

## FIRST CLAIM

### DEPRIVATION OF RIGHTS UNDER THE UNITED STATES CONSTITUTION AND 42 U.S.C. §1983

74. The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

75. By their conduct and actions in falsely arresting, maliciously prosecuting, abusing process against, assaulting and battering (using excessive force against), violating rights to due process of, violating and retaliating for the exercise of rights to free speech and association of, inflicting emotional distress upon, failing to intercede on behalf of, and in fabricating evidence against, Plaintiff, the individual defendants POLICE OFFICER FRANK BULZONI, POLICE SERGEANT ALFRED KELLEY, POLICE DETECTIVE SPECIALIST VINCENT MARTINOS, POLICE

17

SERGEANT SPECIALIST WAYNE LOCK, POLICE SERGEANT "FNU" [First Name Unknown] FITZPATRICK, POLICE OFFICER "FNU" [First Name Unknown] TAYLOR, JOHN DOE # 1, JOHN DOE # 2, JOHN DOE # 3, JOHN DOE # 4, and JOHN DOES, acting both on their own and in conspiracy with each other, intentionally, maliciously, and with a deliberate indifference to or a reckless disregard for the natural and probable consequences of their acts, caused damage and injury in violation of the plaintiff's Constitutional rights as guaranteed under 42 U.S.C. §1983 and the United States Constitution, including its First, Fourth and Fourteenth Amendments.

76.   As a result of the foregoing, plaintiff was deprived of her liberty, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

## SECOND CLAIM

### SUPERVISORY LIABILITY FOR DEPRIVATION OF RIGHTS UNDER THE UNITED STATES CONSTITUTION AND 42 U.S.C. §1983

77.   The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

78.   By failing to remedy the wrongs committed by their subordinates, and in failing to properly train, screen, supervise, or discipline their subordinates, supervisory individuals / officers POLICE SERGEANT ALFRED KELLEY, POLICE

DETECTIVE SPECIALIST VINCENT MARTINOS, POLICE SERGEANT SPECIALIST
WAYNE LOCK, POLICE SERGEANT "FNU" [First Name Unknown]
FITZPATRICK, POLICE OFFICER "FNU" [First Name Unknown] TAYLOR,
JOHN DOE # 1,JOHN DOE # 2, JOHN DOE # 3, JOHN DOE # 4, caused
damage and injury in violation of plaintiff's rights guaranteed
under 42 U.S.C. §1983, and the United States Constitution,
including its First, Fourth and Fourteenth amendments.

79.   As a result of the foregoing, plaintiff was deprived
of her liberty, suffered bodily injury, pain and suffering,
psychological and emotional injury, great humiliation, costs and
expenses, and was otherwise damaged and injured.

### THIRD CLAIM

### LIABILITY OF THE CITY OF NEW YORK
### FOR CONSTITUTIONAL VIOLATIONS

80.   The plaintiff incorporates by reference the
allegations set forth in all preceding paragraphs as if fully set
forth herein.

81.   At all times material to this complaint, defendant THE
CITY OF NEW YORK, acting through its police department, and
through the individual defendants had de facto policies,
practices, customs and usages which were a direct and proximate
cause of the unconstitutional conduct alleged herein.

82.   At all times material to this complaint, defendant THE
CITY OF NEW YORK, acting through its police department, and

19

through the individual defendants, had de facto policies, practices, customs, and usages of failing to properly train, screen, supervise, or discipline employees and police officers, and of failing to inform the individual defendants' supervisors of their need to train, screen, supervise or discipline said defendants. These policies, practices, customs, and usages were a direct and proximate cause of the unconstitutional conduct alleged herein.

83. The misconduct detailed above was also the result of an institutional policy, practice, and/or custom of defendant CITY whereby members of the NYPD take the side of members of Community Boards when there are disputes between the Boards (or the Boards' members) and members of the public, and attempt to violate and retaliate for the exercise of rights to free speech and association that are deemed critical of, or an impediment to, the actions or attempted actions of the Boards, and abuse their police powers in order to attempt to assist the Community Boards (and their members) in their disputes with members of the public.

84. Defendant CITY authorized and tolerated as institutionalized practices, and ratified the misconduct detailed above, by failing to take adequate precautions in the supervision and/or training of police personnel, including the individual NYPD Defendants herein.

85. The defendant CITY's policies/customs and defendant CITY's failure to supervise and/or train its employees, including the

individual NYPD Defendants herein rose to the level of deliberate indifference to the consequences of its actions, and indifference to plaintiff's rights, privileges and immunities secured by the Constitution of the United States of America, <u>inter alia</u>, plaintiff's First, Fourth and Fourteenth Amendment rights.

86.   As a result of the foregoing, plaintiff was deprived of her liberty, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

### FOURTH CLAIM

#### MALICIOUS PROSECUTION

87.   The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

88.   By the actions described above, defendant EVE-LYN WILLIAMS maliciously prosecuted plaintiff without any right or authority to do so.  The acts and conduct of defendant EVE-LYN WILLIAMS were the direct and proximate cause of injury and damage to plaintiff and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

89.   As a result of the foregoing, plaintiff was deprived of her liberty, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

## FIFTH CLAIM

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

90.  The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

91.  By the actions described above, defendant EVE-LYN WILLIAMS engaged in extreme and outrageous conduct, which intentionally caused severe emotional distress to plaintiff.  The acts and conduct of defendant EVE-LYN WILLIAMS were the direct and proximate cause of injury and damage to plaintiff and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

92.   As a result of the foregoing, plaintiff was deprived of her liberty, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

## SIXTH CLAIM

### ABUSE OF PROCESS

93.  The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

94.  By the conduct and actions described above, defendant EVE-LYN WILLIAMS employed regularly issued process against plaintiff compelling the performance or forbearance of prescribed

22

acts.  The purpose of activating the process was intent to harm plaintiff without economic or social excuse or justification, and defendant EVE-LYN WILLIAMS was seeking a collateral advantage or corresponding detriment to plaintiff which was outside the legitimate ends of the process.  The acts and conduct of defendants were the direct and proximate cause of injury and damage to plaintiff and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

95.   As a result of the foregoing, plaintiff was deprived of her liberty, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

### SEVENTH CLAIM

#### NEGLIGENCE

96.  The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

97.  defendant EVE-LYN WILLIAMS negligently caused injuries, emotional distress and damage to the plaintiff. The acts and conduct of defendant EVE-LYN WILLIAMS were the direct and proximate cause of injury and damage to the plaintiff and violated her statutory and common law rights as guaranteed by the laws and Constitution of the State of New York.

98.   As a result of the foregoing, plaintiff was deprived of her liberty, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

## EIGHTH CLAIM

### CONSTITUTIONAL TORT

99.   The plaintiff incorporates by reference the allegations set forth in all preceding paragraphs as if fully set forth herein.

100. Defendants, acting under color of law, violated plaintiff's rights pursuant to Article I, §§ 6, 8, 9, and 12 of the New York State Constitution.

101. A damages remedy here is necessary to effectuate the purposes of §§ 6, 8, 9, and 12 of the New York State Constitution, and appropriate to ensure full realization of plaintiff's rights under those sections.

102.  As a result of the foregoing, plaintiff was deprived of her liberty, suffered bodily injury, pain and suffering, psychological and emotional injury, great humiliation, costs and expenses, and was otherwise damaged and injured.

WHEREFORE, the plaintiff demands the following relief jointly and severally against all of the defendants:

  a. Compensatory damages;

  b. Punitive damages;

  c. The convening and empanelling of a jury to consider the merits of the claims herein;

  d. Costs and interest and attorney's fees;

  e. Such other and further relief as this court may deem appropriate and equitable.


Dated: New York, New York
    December 17, 2016

       \_\_\_/S/ Jeffrey A. Rothman\_\_\_\_\_
       Jeffrey Rothman, Esq.
       315 Broadway, Suite 200
       New York, New York 10007
       (212) 227-2980

       Attorney for Plaintiff